UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

6101 TULLIS DRIVE, LLC                          CIVIL ACTION

VERSUS                                          NO. 23-7066

INTERSTATE SPECIALTY                            SECTION: D (1)
INSURANCE COMPANY ET AL

<u>ORDER AND REASONS</u>

Before the Court is a Motion to Compel Arbitration and Stay the Proceedings, filed by the Defendants, Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority UMR B60451056822021, Certain Underwriters at Lloyds, London-Syndicate 2357, Independent Specialty Insurance Company, and Interstate Fire & Casualty Insurance Company.[1]  Plaintiff 6101 Tullis Drive, LLC filed a response in opposition to the Motion.[2]  After careful consideration of the parties' memoranda, the record, and the applicable law, the Court **GRANTS** the Motion.

I.    **FACTUAL & PROCEDURAL BACKGROUND**

Plaintiff 6101 Tullis Drive, LLC ("Plaintiff") owns an apartment complex at 6101 Tullis Drive in New Orleans (the "Property").[3]  Defendants Certain Underwriters at Lloyd's and Other Insurers Subscribing to Binding Authority UMR B60451056822021, Certain Underwriters at Lloyds, London-Syndicate 2357, Independent Specialty Insurance Company, and Interstate Fire & Casualty

---

[1] R. Doc. 18.
[2] R. Doc. 20.
[3] *See* R. Doc. 2-3 at ¶ 4.

Insurance Company ("Defendants") provided a policy of insurance bearing Velocity Risk Underwriters Account No. 2021-9003034-01 with four separate policy numbers insuring the Property.[4]  On December 6, 2021, the Property sustained fire damage that required demolition of one building and extensive repair of the Property.[5] Plaintiff subsequently made a claim against the Policy.[6]  Defendants paid Plaintiff what Plaintiff deems an "inadequate" sum of money under the Policy to cover the cost of repairs.[7]

Plaintiff initially filed this action against Defendants in state court on October 16, 2023, seeking coverage for the property damage caused by the fire and also seeking to recover extra-contractual penalties pursuant to Louisiana Revised Statutes 22:1892 and 22:1973.[8]  In its Petition for Damages, Plaintiff asserted claims against Defendants for breach of contract and bad faith, alleging that Defendants did not fully and timely pay Plaintiff's insurance claims for property, business interruption, and economic losses arising from the damage to the Property.[9]

On November 28, 2023, Defendants timely removed the state court action to this Court.[10] Defendants then filed the instant Motion to Compel Arbitration and Stay the Proceedings.[11]

---

[4] *See id.* at ¶ 5.
[5] *See id.* at ¶¶ 6–9.
[6] *See id.* at ¶ 11. Approximately one year after the fire, Plaintiff purchased the property from Thibaut Properties C Corporation which assigned to Plaintiff the insurance claim. The parties do not dispute that Plaintiff has standing to assert the insurance claim.
[7] *See* R. Doc. 2-3 at ¶¶ 30–38.
[8] *See id.*; La. R.S. 22:1892 and 22:1973.
[9] *See* R. Doc. 2-3 at pp. 7–8.
[10] R. Doc. 2.
[11] R. Doc. 18.

Defendants assert that the Policy contains a mandatory arbitration agreement mandating that "[a]ll matters in dispute" between the Plaintiff-insured and the Defendants-insurers "in relation to this Insurance, including this policy's formation and validity . . . shall be referred to an Arbitration Tribunal . . ." (the "Arbitration Agreement").[12]  Defendants argue that the Arbitration Agreement falls under the scope of the Convention on the Recognition and Enforcement of Foreign Arbitration Awards (the "Convention") and that Defendants are entitled to an order compelling Plaintiff to submit the entirety of its claims to arbitration in accordance with the Policy terms.[13]  Defendants further highlight that numerous sections of this court have analyzed the identical policy forms and arbitration agreements and have concluded that the arbitration agreements must be enforced pursuant to the Convention.[14] Defendants further point out that a judge in another section of this court has reviewed and analyzed the precise Policy and Arbitration clause in the context of Plaintiff's property damage resulting from Hurricane Ida and also concluded that the Arbitration Clause compelled arbitration.[15]

Plaintiff opposes the Motion.[16] While acknowledging that the foreign insurers "may have a basis to compel arbitration," Plaintiff argues that the two domestic insurers, Interstate Fire & Casualty and Independent Specialty, have no such basis because they are domestic insurers and because "the Policy, by its own terms, is

---

[12] R. Doc. 18-1 at p.6.
[13] *Id.* at p. 10.
[14] *Id.* at p. 8 n.19.
[15] *Id.* at pp. 1–2 (referencing *6101 Tullis Drive, LLC v. Interstate Fire & Casualty Company*, No. 23-1324, 2023 WL 4295716 (E.D. La. June 30, 2023) (Morgan, J.)).
[16] R. Doc. 20.

actually multiple separate contracts of insurance between the policyholder and each of the separate insurers."[17] Plaintiff points to language in the Policy which assigned a separate policy number to the insurers as well as a participation percentage.[18] Plaintiff contends that Louisiana law, La. R. S. 22:868, prohibits arbitration clauses in insurance contracts and thus the arbitration provision is null and void under Louisiana law as to the domestic insurers.[19]

## II.   LEGAL STANDARD

### A.  The Federal Arbitration Act

The Federal Arbitration Act, 9 U.S.C. § 1, *et seq.* (the "FAA"), governs the enforceability of arbitration agreements in federal court.  The FAA provides that an arbitration agreement in writing "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."[20] Additionally, a party to an arbitration agreement "may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement."[21]  "The underlying purpose of the FAA was to create a policy in favor of arbitration, such that 'any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration.'"[22]  "By its terms, the Act

---

[17] R. Doc. 20 at p. 2.
[18] *Id.*
[19] *Id.* at p. 7.
[20] 9 U.S.C. § 2.
[21] 9 U.S.C. § 4.
[22] *Iheanacho v. Air Liquide Large Industries U.S. L.P.*, Civ. A. No. 19-532-SDD-SDJ, 2020 WL 3451689, at *2 (M.D. La. June 24, 2020) (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25, 103 S.Ct. 927, 941, 74 L.Ed.2d 765 (1983); *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 25, 111 S.Ct. 1647, 1651, 114 L.Ed.2d 26 (1991); *Primerica Life Ins. Co. v. Brown*, 304 F.3d 469, 471 (5th Cir. 2002); *D.R. Horton, Inc. v. NLRB*, 737 F.3d 344, 360 (5th Cir. 2013)).

leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed."[23]

In determining whether a party should be compelled to arbitrate, the Court's inquiry consists of three steps.[24]  First, the Court must determine whether a valid agreement to arbitrate exists between the parties.[25]  The Court must then determine whether the dispute in question falls within the scope of the arbitration clause.[26]  If the first two steps are answered affirmatively, the Court must determine "whether any federal statute or policy renders the claims nonarbitrable."[27]

## B. The Convention on the Recognition and Enforcement of Foreign Arbitral Awards

The Convention on the Recognition and Enforcement of Foreign Arbitral Awards of June 10, 1958, 9 U.S.C. §§ 201–09, was ratified with a goal "to encourage the recognition and enforcement of commercial arbitration agreements and international contracts and to unify the standards by which the agreements to arbitrate are observed and arbitral awards are enforced in the signatory countries."[28]

---

[23] *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S. Ct. 1238, 1241, 84 L. Ed. 2d 158 (1985) (citation omitted).

[24] *Hill v. Hornbeck Offshore Services, Inc.*, 799 F. Supp. 2d 658, 661 (E.D. La. 2011) (citing *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 626, 105 S.Ct. 3346, 3353–54, 87 L.Ed.2d 444 (1985); *Fleetwood Enters., Inc. v. Gaskamp*, 280 F.3d 1069, 1073 (5th Cir. 2002)).

[25] *JP Morgan Chase & Co. v. Conegie ex rel. Lee*, 492 F.3d 596, 598 (5th Cir. 2007) (quoting *Will–Drill Res., Inc. v. Samson Res. Co.*, 352 F.3d 211, 214 (5th Cir. 2003)) (internal quotation marks omitted); *Hill*, 799 F. Supp. 2d at 661 (citing *Gaskamp*, 280 F.3d at 1073).

[26] *Conegie ex rel. Lee*, 492 F.3d at 597 (quoting *Will–Drill Res., Inc.*, 352 F.3d at 214).

[27] *Hill*, 799 F.3d at 661 (quoting *Jones v. Halliburton Co.*, 583 F.3d 228, 234 (5th Cir. 2009)) (internal quotation marks omitted); *Washington Mut. Fin. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).

[28] *See Scherk v. Alberto-Culver Co.* 417 U.S. 506 (1974).

Section 201 of the Federal Arbitration Act  provides that the Convention "shall be enforced in United States courts in accordance with this chapter.

Pursuant to the Convention, "a court should compel arbitration if (1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen.'"[29]  Once "these requirements are met, the Convention requires the district court [ ] to order arbitration," "unless it finds that the said agreement is null and void, inoperative or incapable of being performed."[30]

## III.  ANALYSIS

At the outset, the Court notes that both parties agree that the Policy contains an agreement to arbitrate and that the instant dispute falls within the scope of the Policy's Arbitration Agreement.[31]  Further, while Plaintiff does not mention that the Policy in question is a surplus lines policy, both Plaintiff and Defendants attached the Policy to their respective briefs.  The Policy specifies: "This insurance policy is delivered as surplus lines coverage . . . ."[32]  It further provides, "This surplus lines policy has been procured by the following licensed Louisiana surplus lines broker."[33] A plain reading of the policy supports that the Policy is a surplus lines policy. It is

---

[29] *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (quoting *Francisco v. STOLT ACHIEVEMENT MT*, 293 F.3d 270, 273 (5th Cir. 2002)).

[30] *Id.* (quoting *Francisco*, 293 F.3d at 273, then quoting *Sedco, Inc. v. Petroleos Mexicanos Mexican Nat. Oil Co.*, 767 F.2d 1140, 1146 (5th Cir. 1985)).

[31] The policy language states that "[a]ll matters in dispute between you and us . . . in relation to this Insurance . . . including this policy's formation and validity . . . shall be referred to an Arbitration Tribunal . . . ."  R. Doc. 20-1 at p. 45.

[32] R. Doc. 18-4 and 20-1.

[33] *Id.*

also undisputed that the Policy contains an arbitration agreement mandating arbitration.[34] Finally, it is undisputed that the Defendants are comprised of two domestic insurers and two foreign insurers who jointly subscribe to the Policy.

Defendants contend that all four criteria to compel arbitration pursuant to the Convention are met here.  Plaintiff does not dispute that contention as to the foreign insurers.  Instead, Plaintiff argues that compelling arbitration as to the domestic insurers violates Louisiana's prohibition against arbitration clauses in insurance contracts. Plaintiff's argument is without merit.  As this Court previously explained, La. R.S. 22:868's prohibition on arbitration clauses in insurance contracts does not apply to surplus lines policies.[35]  This Court found that "[b]ecause an arbitration clause is a type of forum selection clause, it necessarily follows that arbitration clauses are included within the set of allowable clauses in surplus line policies under [La. R. So. 22:868] Subsection D."[36]

More recently, and more importantly, the Fifth Circuit has recently addressed this very issue.  *Indian Harbor Insurance Company v. Belmont Commons, LLC*[37], involved a surplus lines policy which included nine domestic insurers and two foreign insurers.  The issue before the court was whether La. R. S. 22:868(D), referred to as the "carve-out" provision, encompasses arbitration clauses within its language of "forum or venue" selection clauses.[38] Acknowledging that the Louisiana Supreme

---

[34] *See* R. Doc. 20.
[35] *See Southland Circle, LLC v. Indep. Specialty Ins. Co.*, No. CV 23-855, 2023 WL 7688570 (E.D. La. Nov. 15, 2023) (Vitter, J.).
[36] *Id.* at *6.
[37] 2024 WL 962376 (5th Cir. 2024).
[38] *See id.*

Court had not addressed the question, the Fifth Circuit determined "that the carve-out contained in La. R.S. 22:868(D) unambiguously includes arbitration clauses."[39] Accordingly, the Court concluded that "[s]ince the insurers are all surplus line insurers and the Policy is a surplus lines policy, all of the Insurers may enforce the Policy's arbitration clause, La. R.S. § 22:868(A) notwithstanding."[40]

Here, because the Policy is a surplus lines policy, Louisiana law has no bearing on the enforceability of the Arbitration Agreement as to both the foreign *and* domestic insurers. Each insurer can invoke the Arbitration Agreement to compel arbitration of this dispute.

Plaintiff's argument that the Policy is really separate policies between the Plaintiff and each insurer also fails, but for different reasons. Plaintiff points to sections of the Policy which includes separate policy numbers, percentages of allocation and language that the liability is "several and not joint with other insurers party to this contract."[41] Plaintiff ignores that the Policy includes only one policy number, is referenced throughout the policy in the singular as "the policy," and specifies that "coverage is provided by the following company(s)." Plaintiff ignores that its state court Petition alleged, "At all times relevant hereto, Defendants provided a policy of insurance on the Insured Property, bearing Velocity Risk Underwriters Account No. 2021-9003034-01." Further, Plaintiff alleges identical misconduct by "Defendants" in the handling of Plaintiff's insurance claim.[42]

---

[39] *Id.* at *4.
[40] *Id.*
[41] R. Doc. 20 at pp. 3–4 (referencing R. Doc. 20-1 at pp. 70–71).
[42] *See* R. Doc. 2-3.

Nevertheless, the Court need not address Plaintiff's argument for the following reason: The arbitration clause in the Policy would remain binding upon the domestic insurers even if analyzed as separate contracts because it is not contrary to Louisiana law. Plaintiff makes no argument other than addressed above—that it is contrary to Louisiana law, specifically, La. R. S. 22:868,—to argue that the Arbitration Agreement does not mandate arbitration in this matter.

Having dismissed Plaintiff's argument that Louisiana law prohibits arbitration agreements and that the Policy is really separate insurance policies, the Court now addresses whether the Arbitration Agreement is enforceable under either the FAA or the Convention. As to the foreign insurers, addressing the Convention factors set forth above, the Court finds that there is (1) a written agreement between the parties to arbitrate[43]; (2) the agreement calls for arbitration in the United States—Nashville, Tennessee specifically—which is a Convention signatory nation[44]; (3) the agreement relates to insurance and therefore arises from a commercial relationship; and (4) it is undisputed that two Defendants are citizens of foreign nations. Because all four criteria of the Convention are met, this Court must enforce the arbitration clause and compel arbitration.

---

[43] The arbitration clause included in the agreement between the parties states that:

> All matters in difference between the Insured and the Companies (hereinafter referred to as "the parties") in relation to this insurance, including its formation and validity, and whether arising during or after the period of this insurance, shall be referred to an Arbitration Tribunal in the manner hereinafter set out.

See R. Doc. 20-1 at pp. 45–46.

[44] See *Freudensprung*, 379 F.3d at 339 ("[T]he United States is a signatory to the Convention[.]").

As for the domestic insurers, the parties agree that the instant dispute falls within the broad language of the Arbitration Agreement. The Court also finds that the Arbitration Agreement is valid, thus satisfying the first two factors under the FAA. Regarding the third factor to be addressed, Plaintiff raises no argument other than La. R.S. 22:868 to suggest that the Arbitration Agreement is invalid in any way or was the product of fraud or coercion. Additionally, the Court finds that no statute or policy renders the Arbitration Agreement unenforceable. Accordingly, the Court compels arbitration of this dispute as to the domestic insurers under the FAA.

Pursuant to 9 U.S.C. § 3, when an issue subject to an arbitration clause is raised in a federal court, the court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement."[45] Defendants have moved to stay this litigation upon the Court's ordering of the parties to arbitration.[46] Because this Court finds that arbitration is mandatory in this case, the Court stays this litigation pending resolution of the arbitration proceedings and until, upon the filing of a written motion, the Court finds that the stay should be vacated.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendant's Motion to Compel Arbitration and to Stay[47] is **GRANTED**.

---

[45] 9 U.S.C. § 3.
[46] *See* R. Doc. 6.
[47] R. Doc. 18.

**IT IS FURTHER ORDERED** that this matter is **STAYED** and administratively closed until a final resolution of the arbitration proceedings has been rendered and the Court, upon written motion of the parties or on its own, finds it appropriate to vacate the stay.

New Orleans, Louisiana, March 29, 2024.

**WENDY B. VITTER**
**United States District Judge**